## CHARLES COATES *vs.* OLIVER BLUSH & another.

Where a bankrupt, under the United States bankrupt act of 1841, knowing that one of his creditors, who is about to oppose his discharge, can prove that he has done acts, which, if shown to the district court, would prevent him from obtaining his discharge, pays such creditor a sum of money to induce him not to oppose the discharge, and such creditor thereupon withdraws his opposition, and the bankrupt obtains his discharge, the same may be impeached and avoided under the fourth section of the act.

THIS was an action to recover the amount due the plaintiff on sundry notes of hand signed by the defendants. The writ was dated the 24th of January, 1845. The causes of action accrued before the 13th of January, 1843.

The defence was a certificate of discharge under the bankrupt law of the United States, granted by the district court of Massachusetts, on the 1st of December, 1843, upon a petition filed therein on the 13th of January, 1843.

At the trial, which took place in this court before *Dewey*, J., various grounds were relied on by the plaintiff to impeach and defeat the discharge : 1st, that preferences had been made

in favor of particular creditors, in violation of the bankrupt law; 2d, that the defendants did not surrender their whole property; 3d, "that after the defendants had filed their petition for said discharge, and notice had been issued to their creditors of the court at which to appear and be heard upon said petition, the said defendants, in consideration that C. W. Moore, a creditor of said defendants residing in New York, and to whom said defendants were indebted in the sum of about $300, would not appear and oppose said petition, paid to said creditor fifty per cent on his said debt."

Evidence was introduced by the defendants, tending to establish the fact stated in the third specification; and it appeared, that the dividend paid to the creditors generally, from the estate of the defendants, was less than four per cent.

It did not appear, that the payment of fifty per cent to Moore, by the defendants, was made from any part of their property, which should have gone into the hands of their assignee for distribution.

Evidence was also introduced upon the first and second grounds above specified, and was submitted to the jury under instructions which were not objected to. But the jury, being unable to agree upon a verdict as to these points, returned a verdict in favor of the plaintiff solely upon the third ground.

The questions reserved for the consideration of the whole court arose on the following instructions of the presiding judge, with reference to the third ground relied upon by the plaintiff to impeach the discharge:

"The plaintiff insists that this discharge is invalid by reason of the fraudulent conduct of the defendants in procuring the same. The fraud is said to be established by certain acts supposed to be a fraud upon the bankrupt law, being an attempt to defeat the provisions thereof, and particularly those enactments intended to secure the full surrender of all the property of the bankrupt, and a full and *bona fide* compliance in all the particulars required by the statute.

"To secure this object, the statute has made certain provisions as to the application of a bankrupt for his discharge,

requiring notice to the various creditors, who have proved their debts, of the time and place assigned for hearing the said application, and authorizing such creditors to object to the granting of such discharge, if such bankrupt has made any preference, or done other acts, forbidden by the statute, and upon such objection being sustained by proof, the discharge is to be refused.

"Upon this point, the jury will, for the purposes of the present trial, take the rule of law to be, that if the evidence satisfies them that the defendants, — knowing that one of their creditors, who had a legal demand, that would entitle him to appear and oppose the granting of their discharge, upon the ground, that the bankrupts had done such act or acts, as would have precluded them from being discharged, had their application been opposed, which it would have been but for the fraudulent interference of the defendants in preventing such opposition, by paying such creditor, was about to oppose the granting of said discharge for the causes aforesaid, — paid such creditor a large sum of money, to wit, $150, the same being at the rate of fifty per cent upon the entire debt of said creditor, the said sum so paid being a sum very much larger than the amount he would have received as his *pro rata* dividend, said latter sum not exceeding four per cent ; — and if the jury find that such payment was made designedly, and for the purpose of inducing such creditor to agree to withdraw all opposition to their application for a discharge, which opposition was about to be made, and which would otherwise have been made ; — and that by reason of such fraudulent interposition of the defendants, said creditor withdrew his opposition, and no opposition being made to the granting of said discharge, the defendants thereupon obtained their discharge ; — which might have been prevented, if the defendants had not interfered, and induced said creditor to withdraw his opposition to said discharge, by the payment of said sum of money, upon an agreement that he would withdraw his opposition to said discharge ; — such acts on the part of the **defendants** would operate to defeat their discharge, and the

plaintiff might avoid it. The case must be one showing fraudulent misconduct on the part of the defendants, and the payment must be made for a fraudulent purpose.

" To constitute it such, the motive for the payment of the money must have been to avoid an opposition from a creditor, which might have been effectual to defeat the application for a discharge. If made for other purposes, and not with that view, the payment of the whole or any part of a debt, after the party had filed his petition in bankruptcy, if paid out of assets acquired after he had been declared a bankrupt, would be a lawful act, and could not affect his discharge."

If these instructions were wrong, a new trial is to be granted; otherwise, judgment is to be rendered on the verdict.

*C. P. Huntington*, for the defendants. 1. The instructions are objectionable, in the first place, because, in effect, they submit a question of law, namely, what constitutes a fraudulent interference, to the jury.

2. But, secondly, the act alleged to have been done by the defendants is not one of the acts enumerated in the fourth section of the bankrupt law, which is the only one applicable to the case; and the provision therein relating to this subject is in the nature of a penal statute, and to be construed strictly.

3. Such an act is not sufficient, it seems, according to the decisions of this court, to avoid the discharge. See *Beekman* v. *Wilson*, 9 Met. 434; *Atkins* v. *Spear*, 8 Met. 490.

4. In all the English cases, in which contracts like that in question have been held illegal and void, it will appear either that the action was brought on the contract itself, or that the discharge was obtained by fraud; neither of which facts exists in the present case. But it has been held in England, (and the point is decisive in favor of the defendants), that inducing a creditor to withdraw his opposition is not a cause for setting aside a certificate. 6 Ves. 4; *Lewis* v. *Chase*, 1 P. Wms. 620, cited in Powell on Contracts, 194.

*W. G. Bates & H. W. Bishop*, for the plaintiff.

The instructions were very hard upon the plaintiff, and it is difficult to see how the defendant could complain of them.

All the provisions of the bankrupt law, on which the plain-tiff relies, are contained in the fourth section. The acts thus prohibited are a fraud on the bankrupt law, because they are a fraud upon other creditors. *Jackson* v. *Duchaire,* 3 T. R. 551; *Cockshott* v. *Bennett,* 2 T. R. 763; *Jackson* v. *Lomas,* 4 T. R. 166, and remarks of Ashhurst, J., on page 169; *Jones* v. *Barkley,* 2 Doug. 684, and 1 Cooke B. L. 465, 470; *Leices-ter* v. *Rose,* 4 East, 372; *Steinman* v. *Magnus,* 11 East, 390; *Butler* v. *Rhodes,* 1 Esp. R. 236; *Holmer* v. *Viner,* 1 Esp. R. 132; *Thomas* v. *Rhodes,* 3 Taunt. 477; *Holland* v. *Palmer,* 1 Bos. & Pul. 95; *Butt, Ex parte,* 10 Ves. 359; *Sumner* v. *Brady,* 1 H. B. 647, and 1 Cooke B. L. 467; *Robson* v. *Calze,* 1 Doug. 228, and 1 Cooke B. L. 465; *Waite* v. *Harper,* 2 Johns. 386; *Bruce* v. *Lee,* 4 Johns. 410; *Wiggin* v. *Bush,* 12 Johns. 306; *Yeomans* v. *Chatterton* 9 Johns. 295.

The fraudulent acts, intended to be prohibited by the stat-ute, are frauds at common law, and frauds in contravention of the bankrupt law. *Mawson, Ex parte,* 6 Ves. 614; *Butt, Ex parte,* 10 Ves. 359; *Hall, Ex parte,* 17 Ves. 62; *Caw-thorne, Ex parte,* 19 Ves. 261, note 2 (Sumner's ed.); Eden B. L. 408, 427.

If the parties to such acts may not avoid them on the ground of fraud, third persons are not precluded from so doing. *Hull* v. *Blake,* 13 Mass. 153, 157; *Potter* v. *Wheeler,* 13 Mass. 504; *Winchel* v. *Stiles,* 15 Mass. 230; *Borden* v. *Fitch,* 15 Johns. 121; *Andrews* v. *Montgomery,* 19 Johns. 162.

The distinction between giving money to sign, and to withdraw opposition, is without a difference.

*Huntington,* in reply. The English cases are not appli-cable, because the acts, which were there held illegal, were expressly made so by statute; and the cases cited from the New York reports doubtless stand upon the same footing.

In the present case, it does not appear, that any one was prevented from opposing the discharge.

The question depends upon a fair construction of the bankrupt act; and, upon principles of common sense no one

Coates *v.* Blush & another.

reading it would ever suppose, from its terms, that such an act as that of the defendants, would invalidate their discharge.

Metcalf, J.* We must infer from the verdict that the defendants paid to one of their creditors a large sum, knowing that he could prove that they had done acts which would, if shown to the district court, have prevented their obtaining a discharge; that such creditor was about to oppose their discharge, and that they paid him said sum for the purpose of inducing him not to oppose their discharge, which he would have opposed, if they had not so paid him; that he, in consequence of such payment, forbore to oppose their discharge; and that they thereupon obtained their discharge, which might have been prevented, if they had not, by such payment, induced him not to oppose it. Upon these facts, the question is, whether the defendants' discharge is avoided by the fourth section of the United States bankrupt act of 1841

The second section of that act declares that "all future payments, securities, conveyances or transfers of property, or agreements made or given by any bankrupt, in contemplatior of bankruptcy, and for the purpose of giving any creditor, indorser, surety, or other person, any preference or priority over the general creditors of such bankrupt, and all other payments, securities, conveyances or transfers of property, or agreements made or given by such bankrupt, in contemplation of bankruptcy, to any person or persons whatever, not being a *bona fide* creditor, or purchaser for a valuable consideration, without notice, shall be deemed utterly void, and a fraud upon this act; and the assignee under the bankruptcy shall be entitled to claim, sue for, recover and receive the same as part of the assets of the bankruptcy; and the person making such unlawful preferences and payments shall receive no discharge under the provisions of this act." "And in case it shall be made to appear to the court, that the bankrupt, his application being voluntary, has, subsequent to

* *Forbes,* J., did not sit in this case.

48*

the first day of January last [1841], or at any other time, in contemplation of the passage of a bankrupt law, by assignments or otherwise, given or secured any preference to one creditor over another, he shall not receive a discharge, unless the same be assented to by a majority in interest of those of his creditors who have not been so preferred."

The fourth section (after providing for the granting of a discharge and certificate to bankrupts who shall *bona fide* surrender their property, obey the orders of court, and otherwise conform to all the other requisitions of the act) contains the following clause : " If any such bankrupt shall be guilty of any fraud or wilful concealment of his property or rights of property, or shall have preferred any of his creditors, contrary to the provisions of this act, or shall wilfully omit or refuse to comply with any orders or directions of such court, or to conform to any other requisites of this act, or shall, in the proceedings under this act, admit a false or fictitious debt against his estate, he shall not be entitled to any such discharge or certificate." A further provision in the same section is, that " such discharge and certificate, when duly granted, shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts and other engagements of such bankrupt, which are provable under this act, and shall be and may be pleaded as a full and complete bar to all suits brought in any court of judicature whatever, and the same shall be conclusive evidence, of itself, in favor of such bankrupt, unless the same shall be impeached for some fraud or wilful concealment by him of his property or rights of property, as aforesaid, on prior reasonable notice specifying in writing such fraud or concealment."

In the latter of these clauses, the only enumerated causes for impeaching a discharge are fraud and wilful concealment of property by the bankrupt; though, in the former clause, not only fraud and concealment of property by him, but also a preference given by him to any creditor, a wilful omission by him to comply with any orders of the court, or to conform

Coates *v.* Blush & another.

to any other requisitions of the act, and the admitting by him of any false or fictitious debt against his estate, are made sufficient cause for withholding a discharge. And it was contended by counsel, in the case of *Beekman* v. *Wilson,* 9 Met. 434, that a preference given by a bankrupt to one of his creditors was not a cause for impeaching his discharge, although it might have prevented his obtaining it; and that the fraud, for which a discharge might be impeached, was fraud at the common law exclusively, and not those acts which are declared, by the second section of the bankrupt law, to be a fraud on that law. But it was held otherwise, in that case, and the discharge was decided to be void by reason of the bankrupt's having preferred one creditor to another. The same was held in *Brereton* v. *Hull,* 1 Denio, 75, where it was also further held, that a discharge might be impeached and avoided by reason of the bankrupt's having made payments and transfers of property, in contemplation of bankruptcy. And in *Burnside* v. *Brigham,* 8 Met. 75, it seems to have been considered, that if a bankrupt should wilfully and fraudulently omit to insert the name of one of his creditors in the list of them which the first section of the act requires him to file, so that the omitted creditor should not have notice of the proceedings, the bankrupt's discharge might be avoided for that cause.

We are of opinion that the word " fraud " is used in the same sense in both clauses of the fourth section, and that it means something more than the acts which are mentioned in connection with it. In the latter clause, " fraud or wilful concealment of property" are the only terms used. Yet concealment of property is a fraud. In the former clause, " fraud " is united with all the enumerated causes for withholding a discharge, most of which, if not all, are frauds. The word " fraud" must therefore have a meaning which reaches and operates beyond all those enumerated causes. Otherwise, it is superfluous. And our opinion is, that the word, in both clauses, means, at least, all conduct of the bankrupt which is a fraud upon the bankrupt act, whether declared

by the act to be such, or not. The purpose of the act was to discharge debtors, upon their honestly giving up their property to be equally divided among their creditors. All concealment of property, all preferences of one creditor over another, and all other acts inconsistent with good faith, are to be regarded as fraudulent, and as sufficient causes for barring the debtor's claim to a discharge, and to avoid a discharge after it is granted. Yet the defendants in this case contend that their discharge protects them, although they have, according to the finding of the jury, done acts which, if known to the court, before it was granted, would have prevented the court from granting it, and which would have been made known to the court, if the defendants had not, by paying money to one of their creditors, induced him to withhold such knowledge from the court.

Under the English bankrupt laws, the payment of money or giving security to a creditor, to induce him to sign a bankrupt's certificate, vitiates the discharge, on the ground of fraud. *Robson* v. *Calze,* 1 Doug. 228; *Holland* v. *Palmer,* 1 Bos. & Pul. 95; 1 Cooke Bank. Law, (8th ed.,) 470. We have seen no case, in which a discharge has been avoided in England, on the ground of the payment of money to a creditor to induce him to withdraw his opposition to a certificate; yet a bond given to a creditor, to induce him to withdraw a petition which he had preferred to the chancellor against the allowance of the certificate, has been decided to be void. *Sumner* v. *Brady,* 1 H. B. 647. See also Esp. Bank. Law, 316.

We have no occasion to express an opinion on the question, whether a payment by a bankrupt to a creditor, for such purpose, would avoid a discharge, under the United States bankrupt act, if it should not be shown that there was sufficient cause for a successful opposition. In *Chamberlain* v. *Griggs,* 3 Denio, 9, it was decided, in effect, that this would not, of itself, be such a fraud as would avoid a discharge pleaded in bar of an action against the bankrupt for an antecedent debt. The question, in that case, arose on a demurrer to a replication

which averred that one of the defendant's creditors filed certain objections to his discharge, (some of which, if proved, might have been sufficient to prevent its being granted,) and that the bankrupt induced the creditor, by corruptly and fraudulently giving him goods of the value of $1000, to withdraw his objections, and that he did withdraw them. The court sustained the demurrer, on the ground that the replication did not aver that the objections, which the creditor withdrew, were well founded, and that, without such an averment, the charge of fraud had no basis beyond a strong inference, which was not sufficient. But, in the case now before us, we are not left to mere inference. The jury have found that the defendants induced one of their creditors, by paying him more than the amount of his dividend, to withdraw an opposition to their discharge, which would have prevailed, if it had not been withdrawn, and which would not have been withdrawn, if such payment had not been made. And we are of opinion that this was such a fraud as vitiates the defendants' discharge, under the fourth section of the bankrupt law of 1841; that it was a fraud on the other creditors, and on that law. In the case of *Robson* v. *Calze*, already cited, where notes for money had been given to a creditor, to induce him to sign a bankrupt's certificate, lord Mansfield said, that all the creditors " ought to be upon a par, and if some are induced to sign the certificate, because others have, whom they suppose to be upon a par with themselves, but who in fact have been paid, this is a gross fraud on them. If the fact had come to the knowledge of any of the creditors, and had been stated by them to the chancellor, before the allowance of the certificate, he could not have allowed it." The same principle seems to us to be applicable to the present case. The knowledge of acts done by the defendants, which would have prevented the grant of their discharge, was concealed from the district court by means of the payment of money by them, to one of their creditors, to induce him to make that concealment. All the creditors were or might have been sufferers by that concealment. In *Sumner* v.

*Brady*, 1 H. B. 647, where a suit was brought on a bond given to induce a creditor to withdraw his petition against the allowance of a certificate by the chancellor, on the ground that persons, who were not creditors of the bankrupt, had sworn to debts, lord Loughborough said, " The plaintiff presented a petition, which he ought to have pursued.   Instead of that, he is induced to suppress his petition, in order to gain his own debt, while all others are barred by the certificate which is secured by his suppression ; and this under a law made to prevent fraud, and to secure an equal advantage to all creditors.   A distinction is attempted to be made between the act of giving money for the consent of the creditor to sign the certificate, and that of giving him money to withdraw his opposition to it ; as if the former act were only to be condemned.   But see how the act of withdrawing an opposition stands, compared with the actual signing the certificate.   The argument urged is, that it is a voluntary act ; the creditor may do as he pleases.   But the law feels it a mischief and a subversion of the bankrupt laws to traffic with them and the power given by those laws."   And Heath, J., said, " This is a fraud affecting the other creditors, and against the policy of the law.   It is a matter of choice whether a creditor will prefer a petition ; but, having preferred it, he ought not to withdraw it so as to injure the other creditors."

We have seen the case of *Fox* v. *Paine*, 10 Alab. 523, where it was held that " the mere fact, that another creditor has been induced to withdraw his opposition, is not by itself a fraud on the act."   If this was all that was intended to be decided we have no occasion to express any opinion concerning the decision.   It would conform to the doctrine already referred to in 3 Denio, 9.   But if, as it would seem from the opinion given, it was held and meant to be decided, that a bankrupt's discharge cannot be avoided by showing that he induced a creditor, by paying money to him, to withdraw an opposition, which would have prevented the discharge, if it had not been withdrawn, we cannot, for the reasons already given, concur in such decision.                  *Judgment on the verdict.*